**No. 13-3959**

IN THE

# United States Court of Appeals

**FOR THE SIXTH CIRCUIT**

───────────

ARCH ON THE GREEN, *et al.*,

*Petitioners,*

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR

and

LAWRENCE GROVES,

*Respondents.*

───────────

ON PETITION FOR REVIEW OF A DECISION
AND ORDER OF THE BENEFITS REVIEW BOARD,
UNITED STATES DEPARTMENT OF LABOR

───────────

**PETITIONERS' BRIEF**

───────────

Mark E. Solomons
Laura Metcoff Klaus
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
(202) 533-2361

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure Of Corporate Affiliations
# And Financial Interest

Case Number: 13-3959        Case Name: Arch on the Green, Inc. v. Lawrence Groves

Name of counsel: Laura Metcoff Klaus

Pursuant to 6th Cir. R. 26.1, Arch on the Green, Inc. and Old Republic Insurance Co.
Name of Party
makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:


    Yes, Old Republic Insurance Company is a wholly owned subsidiary of the Old Republic International Corporation, a publicly traded corporation.


2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

    Yes, See above


---

CERTIFICATE OF SERVICE

I certify that on October 31, 2013                                    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Laura Metcoff Klaus

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

## TABLE OF CONTENTS

Page

DISCLOSURE OF CORPORATE AFFILIATIONS........................................ i

TABLE OF AUTHORITIES ............................................................. iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ................................. ix

I.    STATEMENT OF SUBJECT MATTER AND
      APPELLATE JURISDICTION ........................................ 1

II.   STATEMENT OF THE ISSUES ........................................... 1

III.  STATEMENT OF THE CASE .............................................. 2

IV.   STATEMENT OF FACTS.................................................... 6

V.    SUMMARY OF ARGUMENT................................................ 9

VI.   ARGUMENT.................................................................. 12

      A.    Standard of Review ...................................................... 12

      B.    The ALJ's Decision Does Not Conform With Applicable Law;
            No Evidence Satisfies the Correct Standard ............................... 12

            1.    To Establish Legal Pneumoconiosis, a Claimant's
                  Impairment Must Be Significantly Related to or
                  Substantially Aggravated by Coal Dust Exposure............. 13

            2.    To Establish Disability Due to Pneumoconiosis,
                  the Proof Must Establish that Pneumoconiosis
                  Played More than a Minimal or Minor Role...................... 18

            3.    No Evidence in the Record Satisfies the Causation
                  Standard for Finding Either Legal Pneumoconiosis or
                  Disability Due to It............................................................. 21

C.    An ALJ's Reliance on Regulatory Intent Rather than the
      Regulations and Evidence in the Record Violates the
      Administrative Procedure Act and Arch's Due
      Process Rights ................................................................................    23

VII.   CONCLUSION ............................................................................    27

Certification

## TABLE OF AUTHORITIES

Page

Cases:

*A & E Coal Co. v. Adams*,
    694 F.3d 798 (6th Cir. 2012) ........................................................................ 25,26

*Adams v. Director, OWCP*,
    886 F.3d 818 (6th Cir. 1989)........................................................................ 10,16

*Allentown Mack Sales & Serv., Inc. v. NLRB*,
    522 U.S. 359 (1998)........................................................................ 25

*Blakley v. Amax Coal Co.*,
    54 F.3d 1313 (7th Cir. 1995)........................................................................ 22

*Cal-Glo Coal Co. v. Yeager*,
    104 F.3d 827 (6th Cir. 1997) ........................................................................ 12

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979)........................................................................ 26

*Consolidation Coal Co. v. McMahon*,
    77 F.3d 898 (6th Cir. 1996)........................................................................ 24

*Cornett v. Benham Coal, Inc.*,
    227 F.3d 569 (6th Cir. 2000)........................................................................ 16

*Cross Mtn. Coal Co. v. Ward*,
    93 F.3d 211 (6h Cir. 1996) ........................................................................ 23

*Cumberland River Coal Co. v. Banks*,
    690 F.3d 477 (6th Cir. 2012) ........................................................................ 21

*Director, OWCP v. Greenwich Collieries*,
    512 U.S. 267 (1994)........................................................................ 11,13,24,26

*Director, OWCP v. Quarto Mining Co.*,
    901 F.2d 532 (6th Cir. 1990) ................................................ ......   12

*Doris Coal Co. v. Director, OWCP*,
    938 F.2d 492 (4th Cir. 1991) ...........................................   15

*Eastover Mining Co. v. Williams*,
    338 F.3d 501 (6th Cir. 2003).....................................   14

*Glen Coal Co. v. Seals*,
    147 F.3d 502 (6th Cir. 1998).....................................   15

*Greene v. King James Coal Mining, Inc.*,
    575 F.3d 628 (6th Cir. 2009) ...................................   12,17

*Griffith v. Director, OWCP*,
    49 F.3d 184 (6th Cir. 1995) ........................................   17

*Harman Mining Corp. v. Director, OWCP*,
    678 F.3d 305 (4th Cir. 2012) ...................................   15,25

*Island Creek Coal Co. v. Calloway*,
    No. 09-4589 (6th Cir. Feb. 7, 2012) ......................................6,10,19,20

*Jonida Trucking, Inc. v. Hunt*,
    124 F.3d 739 (6th Cir. 1997) ...................................   12

*Martin v. Ligon Prep. Co.*,
    400 F.3d 302 (6th Cir. 2005) ...................................   5

*Massey v. Peabody Coal Co.*,
    2010 WL 2711288 (4th Cir. July 6, 2010) ................................   23

*Mingo Logan Coal Co. v. Owens*,
    2013 WL 3929071 (4th Cir. July 31, 2013) ................................   21

*National Min. Ass'n v. Dep't of Labor*,
    292 F.3d 849 (D.C. Cir. 2002) ....................................   26

*Peabody Coal Co. v. Greer*,
    62 F.3d 801 (6th Cir. 1995) ........................................................ 12

*Peabody Coal Co. v. Smith*,
    127 F.3d 504 (6th Cir. 1997) ....................................... 9,10,14,16,20

*Southard v. Director, OWCP*,
    732 F.2d 66 (6th Cir. 1984) ................................................... 15,16

*U.S. Steel Mining Co., Inc. v. Director, OWCP* [*Jarrell*],
    187 F.3d 384 (4th Cir. 1999) ..................................................... 22

*Westmoreland Coal Co., Inc. v. Cochran*,
    718 F.3d 319 (4th Cir. 2013) .................................................. 21,23

*York v. Benefits Rev. Bd.*,
    819 F.3d 134 (6th Cir. 1987) ..................................................... 12


Statutes and Regulations:

Administrative Procedure Act,
    5 U.S.C. §§ 551-559 ........................................................... 2,11,23
    5 U.S.C. § 551(4) .................................................................. 26
    5 U.S.C. § 553(b) ................................................................. 26

Black Lung Benefits Act, as amended, 30 U.S.C.
§§ 901-945
    Section 401(a), 30 U.S.C. § 901(a)................................... 9,24
    Section 411(c)(4), 30 U.S.C. § 921(c)(4) ............................. 4
    Section 422(a), 30 U.S.C. § 932(a)................................... 1,3
    Section 426(a), 30 U.S.C. § 936(a) .................................. 25

Longshore Act, as amended, 33 U.S.C. §§ 901-950
    Section 21(b), 33 U.S.C. § 921(b) ................................... 1,3
    Section 21(c), 33 U.S.C. § 921(c) ....................................... 1

Federal Coal Mine Health and Safety Act of 1969,
  Pub. L. No. 91-173, 83 Stat. 792, as amended............................... 1

Black Lung Benefits Act of 1972, Pub. L. No. 92-303,
86 Stat. 150 (1972)...................................................................... 1

Black Lung Benefits Revenue Act of 1977,
Pub. L. No. 95-227, 92 Stat. 11 (1978).......................................... 1

Black Lung Benefits Reform Act of 1977,
Pub. L. No. 95-239, 92 Stat. 95 (1978).......................................... 1

Black Lung Benefits Revenue Act of 1981 and
Black Lung Benefits Amendments of 1981,
Pub. L. No. 97-119, 95 Stat. 1635 (1981)........................................ 1

Consolidated Omnibus Budget Reconciliation
Act of 1985, Pub. L. No. 99-272, 100 Stat.  312, 313 (1986) ........................ 1

Omnibus Budget Reconciliation Act of 1987,
Pub. L. No. 100-203, 101 Stat. 1330 (1987)..................................... 1

Patient Protection and Affordable Care Act,
Pub. L. No. 111-148, § 1556 (March 23, 2010) ......................................... 1,4

Black Lung Program Regulations
20 C.F.R. Part 718, App. B.......................................................... 6
20 C.F.R. Part 718, App. C. ......................................................... 6
20 C.F.R. § 718.201 ...................................................................2,10,13,18
20 C.F.R. § 718.201(a)(1)..............................................................2,13,15
20 C.F.R. § 718.201(a)(2) ............................................................ 2,15
20 C.F.R. § 718.201(b) .............................................................. 14,17
20 C.F.R. §§ 718.202-718.204 ..................................................... 12
20 C.F.R. § 718.202 ..................................................................... 2,13
20 C.F.R. § 718.202(a)(4) ............................................................ 13
20 C.F.R. § 718.203......................................................... 5,13,15,16,17
20 C.F.R. § 718.203(a) ................................................................ 5
20 C.F.R. § 718.204..................................................................... 2,18
20 C.F.R. § 718.204(c) ..........................................................2,10,18,19
20 C.F.R. § 718.204(c)(1) ........................................................... 18
20 C.F.R. § 725.309 .................................................................... 13

65 Fed. Reg. 79,923 (Dec. 20, 2000) .................................................................. 18

65 Fed. Reg. 79,941 (Dec. 20, 2000) .................................................................. 25


Miscellaneous:

Marine, "Clinically Important Respiratory Effects of Dust Exposure
    and Smoking in British Coal Miners," 137 AM. REV. OF
    RESPIRATORY DISEASE 106 (1988) ............................................................ 25

http://www.cancer.gov/dictionary?CdrID=306510 ............................................ 3

http://www.cancer.org/healthy/toolsandcalculators/calculators/app/cigarette-
    calculator ..................................................................................................... 3

http://www.nlm.nih.gov/medlineplus/ency/article/003853.htm ......................... 6

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

This case presents an important issue of administrative practice and procedure. Pursuant to Local Rule 34(a), petitioners respectfully request oral argument because they believe that the give-and-take of argument may assist the Court in resolving the issues presented in this case.

# I.    STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Arch on the Green, Inc. and its carrier (collectively "Arch") seek relief from an award of benefits under the Black Lung Benefits Act (the "BLBA" or "Act").[1] The administrative law judge ("ALJ") issued the decision and order that is the subject of this appeal on December 15, 2011.  Appendix ("Apx.") 13.  Arch filed an appeal to the Benefits Review Board, U.S. Department of Labor ("DOL"), within thirty days.  R. __.  The appeal was timely and the Board had jurisdiction to consider the case under 33 U.S.C. § 921(b), *incorporated by reference into* 30 U.S.C. § 932(a).  On December 21, 2012, the Benefits Review Board issued a decision and order affirming the ALJ's decision, and on June 27, 2013, declined to reconsider.  Apx. 3, 5.  That decision was final within the meaning of 33 U.S.C. § 921(b), *incorporated by reference into* 30 U.S.C. § 932(a).

This Court received Arch's appeal from that final decision on August 19, 2013, within sixty days of the Board's decision.  Apx. 1.  The appeal is timely under 33 U.S.C. § 921(c), *incorporated by reference into* 30 U.S.C. § 932(a).  The miner, Lawrence Groves, last worked in the Commonwealth of Kentucky. These facts establish this Court's appellate and subject matter jurisdiction.

# II.    STATEMENT OF THE ISSUES

A.    Did the ALJ apply an incorrect legal standard in awarding benefits on account of a disease and disability only "minimally" if at all related to coal dust exposure, in violation of 20 C.F.R. §

---

[1]    Part C of Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, 86 Stat. 150, and as further amended by the Black Lung Benefits Reform Act of 1977, 92 Stat. 95, the Black Lung Benefits Revenue Act of 1977, 92 Stat. 11, the Black Lung Benefits Revenue Act of 1981, and the Black Lung Benefits Amendments of 1981, 95 Stat. 1635, Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat. 312, 313 (1986), and Omnibus Reconciliation Act of 1987, Pub. L. No. 100-203, 101 Stat. 1330 (1987), and the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556 (March 23, 2010) ("PPACA").

718.201 and 718.204(c). requiring that the proof establish that coal dust exposure "substantially contributed to or significantly aggravated" the claimant's respiratory condition or that pneumoconiosis was a "substantially contributing cause" of the claimant's total disability and this Court's case law.

B.   No matter what standard is applied under sections 718.202 and 718.204, does a doctor's finding that coal dust contributed only minimally to a claimant's pulmonary condition and minimally if at all to a claimant's total disability satisfy claimant's burden of proof under this Court's jurisprudence.

C.   Alternatively, does an ALJ's reliance on a whether medical opinion "best fits the regulatory intent" of the Department of Labor to resolve conflicts in the record violate the Administrative Procedure Act and the Supreme Court's decision in *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267 (1994).

## III.   STATEMENT OF THE CASE

Lawrence Groves first filed for benefits on September 9, 1998, when he was 66 years old and had been out of the mines for eleven years.  Dx. 1-257.[2]  On January 25, 2000, an ALJ denied that claim.  Apx. 73: Dx. 1-2.  Although the ALJ concluded that Groves was disabled for work from a respiratory standpoint, the medical evidence disclosed that Groves did not have pneumoconiosis.  Apx. 81: Dx. 1-10.  The x-ray readings were negative for "clinical" or "medical" pneumoconiosis (defined at 20 C.F.R. § 718.201(a)(1) as those diseases recognized by the medical community as pneumoconioses).  Apx. 78: Dx. 1-7.  The doctors disputed whether Groves had "legal" pneumoconiosis (defined at 20 C.F.R. § 718.201(a)(2) as a chronic lung disease arising out of coal mine employment).

---

[2]    Exhibits that are not included in the Appendix are identified as follows: "Dx." refers to an exhibit submitted by the Director, OWCP, followed by the exhibit number assigned to it; "Ex." refers to an exhibit submitted by the Employer; and "Cx." refers to an exhibit submitted by the claimant.

They considered whether Groves's condition was caused by his twenty years of surface mining or his fifty-two pack years[3] of smoking cigarettes. The ALJ credited the better reasoned and better documented opinions from the better qualified doctors who concluded that cigarette smoking, not coal mining, caused Groves's impairment. Apx. 79: Dx. 1-8. When Groves failed to file any appeal from that decision, it became final. 33 U.S.C. § 921(b), *incorporated by reference into* 30 U.S.C. § 932(a).

More than six years later, on May 1, 2006, DOL received Groves's second application for benefits. Dx. 3. By then, Groves had been diagnosed with lung cancer, unrelated to his coal mine employment, which required the removal of part of his lung. On September 17, 2009, an ALJ awarded benefits. Apx. 43. The ALJ found that although the weight of x-ray readings and biopsy reports still did not establish "clinical" pneumoconiosis, the proof established that Groves now had "legal" pneumoconiosis. The ALJ relied on the opinion of one doctor, Dr. Rasmussen, who stated that Groves's coal dust exposure contributed, "to a minor degree" or "minimally" to his chronic lung disease. Apx. 88, 89: Cx. 8 at 3, 4; Apx. 60-61, 67: ALJ D&O at 18-19. 25. The ALJ declared that this opinion established that coal dust inhalation was more than a *de minimus* factor in Groves's condition. *Id.* The ALJ also declared Dr. Rasmussen's opinion that coal dust

---

[3]     A pack year is the product of the number of packages of cigarettes smoked per day multiplied by the number of years the person smoked cigarettes. For example, smoking one package of cigarettes daily for one year equals one pack year. Smoking two packages of cigarettes daily for twenty years equals forty pack years. *See* http://www.cancer.gov/dictionary?CdrID=306510. One pack-year is the equivalent of 365 packs of cigarettes or 7,305 cigarettes. *See* http://www.cancer.org/healthy/toolsandcalculators/calculators/app/cigarette-calculator. Groves smoked at least 379,860 cigarettes.

3

minimally contributed to Groves's disability established that coal dust was a substantial contributing cause of that disability.  Apx. 71: ALJ D&O at 29.

Arch filed a timely appeal to the Benefits Review Board.  On October 28, 2010, the Board vacated the ALJ's decision, finding it was neither adequately explained nor consistent with law.  Apx. 35-36, 38, 40: BRB D&O at 4-5, 7, 9.

On remand, the ALJ again awarded benefits.[4]  Apx. 13: ALJ D&O on Remand.  The ALJ found "that Dr. Rasmussen's report is the most rational in this record, and further that it is 'reasoned' as that term is defined by regulation and case law, especially the law of the 6th Circuit."  Apx. 17: ALJ D&O on Remand at 5.  The ALJ cited no regulation or case law in support but twice cited the Secretary's determination during "regulatory fact finding" that "the risk of chronic bronchitis clearly increases with increasing dust exposure and that smokers who mine have an additive risk of developing chronic bronchitis.  Even in the absence of smoking, coal mine dust exposure is clearly associated with clinically significant airways obstruction and chronic bronchitis. The risk is additive with cigarette smoking."  Apx. 18, 25: ALJ D&O on Remand at 6, 13.  And, although neither Dr. Rasmussen nor anyone else diagnosed chronic bronchitis in Groves's case, the ALJ credited Dr. Rasmussen's opinion because it was consistent with the

---

[4]    By the time the case reached the Board, Congress had passed the Affordable Care Act ("ACA"), which amended the BLBA by reviving a rebuttable presumption of entitlement under 30 U.S.C. § 921(c)(4), that otherwise had expired for claims filed after January 1, 1982.  *See* Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556 (March 23, 2010).  The Board therefore directed the ALJ to allow the parties to supplement the record to respond to the change in law and to consider whether Groves was eligible for any presumption revived by the ACA.  Apx. 41: BRB D&O at 10.  On remand, the ALJ decided that the amendments to the BLBA did not apply to Groves because the proof did not establish that the conditions of his surface mine employment were comparable to fifteen or more years of underground mining.  Apx. 15: ALJ D&O on Remand at 3.

4

2001 regulations although the ALJ cited no regulation in support. *Id.* He discredited the contrary opinions because

> neither have provided a reasoned basis to show that they can distinguish the effects from tobacco smoking and mining. In fact, the articles that they have referenced better su8pport [sic] a contrary view. Moreover, even if they might be correct, they do not address that legislative finding made by the department [sic] of Labor that smoking and mining effects may be additive, whereas, Dr. Rasmussen's rationale does."

Apx. 28: ALJ D&O on Remand at 16. The ALJ again concluded that Dr. Rasmussen's opinion was documented by the evidence of COPD, Groves's work history and smoking habit. And the ALJ announced that Dr. Rasmussen's conclusion that coal dust contributed only minimally or to a minor degree established both legal pneumoconiosis and disability due to it because the proof need only establish that a miner's pneumoconiosis arise "at lest [sic] in part out of coal mine employment." Apx. 19: ALJ D&O on Remand at 7, quoting 20 C.F.R. § 718.203(a); Apx. 29: ALJ D&O at 17. *But see id.* (stating that since legal pneumoconiosis was established, it was unnecessary to apply the presumption at section 718.203). The ALJ again concluded that since the opinion was well documented, it also was reasoned and "best fits the regulatory intent." Apx. 19, 28. He summarily rejected the Board's opinion that Dr. Rasmussen's view was based on general statistics regarding the causes of COPD, declaring the Board's decision to be "obviously taken at full cloth from Employer's argument." Apx. 28: ALJ D&O on Remand at 16 & n.6. And, he declared Dr. Rasmussen to be the most qualified notwithstanding his lack of board-certification in pulmonary disease because in another case, this Court found the doctor was qualified. Apx. 29: ALJ D&O on Remand at 17, citing *Martin v. Ligon Prep. Co.*, 400 F.3d 302 (6th Cir. 2005).

5

This time, the Benefits Review Board affirmed the ALJ's decision.  Apx. 5: BRB D&O dated December 21, 2012.  The Board's decision failed to take into account a decision issued by this Court which vacated an ALJ's award of benefits where the ALJ relied on an "at least in part" standard for assessing disability due to pneumoconiosis rather than the standard specified in DOL's regulations.  *Island Creek Coal Co. v. Calloway*, No. 09-4589 (6th Cir. Feb. 7, 2012).  Arch therefore timely requested reconsideration of the Board's decision for this and other reasons.  The Board summarily denied that motion on June 27, 2013.  Apx. 3: Order on Motion for Reconsideration.  This timely appeal followed.

## IV.   STATEMENT OF FACTS

Groves worked exclusively as a strip miner, off and on, from 1967 until 1987.  Dx. 1-246, 1-251.  Beginning before he started working as a miner and continuing for at least a decade after he retired from mining, Groves smoked cigarettes, sometimes two packages daily, a habit that spanned more than fifty pack/years.

The medical record in this case includes various chest x-rays, pathologists' reports, pulmonary function studies,[5] arterial blood gas tests,[6] and medical opinions prepared for both litigation and treatment.  The ALJ concluded that neither the x-

---

[5]   A pulmonary function study or spirometry measures how well the lungs take in and release air.  A patient breathes into a mouthpiece connected to a spirometer which records the amount and the rate of air this is inhaled or exhaled during the course of certain specified maneuvers.  *See* http://www.nlm.nih.gov/medlineplus/ency/article/003853.htm.  DOL's regulations include various tables which identify values which, depending on the age, gender and height of a claimant, may suggest disability.  20 C.F.R. Part 718, App. B.

[6]   An arterial blood gas test measures how well gases such as oxygen are moved from the atmosphere into the body's circulation.  *See* http://www.nlm.nih.gov/medlineplus/ency/article/003853.htm.  Here too, DOL's regulations include values that, if satisfied, may suggest a patient's disability for work.  20 C.F.R. Part 718, App. C.

rays nor the pathology slides established that Groves had clinical or medical pneumoconiosis.  Apx. 60, 62: ALJ D&O at 18, 20.  Nor did the evidence establish a connection between Groves's lung cancer and his coal dust exposure.  Apx. 65: ALJ D&O at 23.  And although the objective tests in the record conflicted, most of the doctors concluded that Groves was totally disabled for work from a respiratory standpoint.  At this point, then, only four medical opinions remain in dispute and only with respect to whether Groves had a work-related disease or disability notwithstanding the x-rays.

Dr. Valentino Simpao examined Groves on May 11, 2006.[7]  Apx. 83: Dx. 11-3.  Although Groves told the doctor in 1998, that he smoked one package of cigarettes daily for fifty-three years, beginning in 1945, and ending in January 1998, in 2006, he reported that he started smoking cigarettes in 1948, and quit smoking in 1997, that for ten years, he smoked one-half package daily, and for fifteen years, he smoked two packages daily, for a fifty-nine pack year history. Apx. 83: Dx. 11-3, Dx. 1-203.  The doctor reviewed a chest x-ray which showed emphysema and chronic obstructive pulmonary disease with very large emphysematous bullae in the right upper lung field, pulmonary function studies, arterial blood gas tests, and an EKG which showed a possible previous heart attack.  Apx. 84:, 11-4.  Dr. Simpao alone reported cyanotic lips and nail beds and a plethoric face on physical examination, but he did not explain the significance of these findings.  *Id.*  He diagnosed pneumoconiosis, stating:

> I feel that his 18 years of coal dust exposure is the significant contributing factor in his pulmonary impairment.  However, he does have a history of smoking which is an aggravating factor.

---

[7]    Dr. Simpao also examined Groves in 1998, when he first filed for benefits. Dx. 1-203.  His opinion remained essentially unchanged.

> Unfortunately there is no proven procedure to determine the degree these factors have influenced his pulmonary impairment.

Apx. 85: Dx. 11-5.

Three other doctors disagreed with this diagnosis. Dr. Robert Powell examined Groves on September 13, 2006, and later reviewed additional evidence including the opinion of Dr. Simpao and various x-ray readings and hospital records. Dx. 14-2, Ex. 2, Ex. 7. He diagnosed severe bullous emphysema due to long-term tobacco use. Dx. 14-4, Ex. 2 at 6. This was the same diagnosis that Dr. Powell rendered in November 1998, when he examined Groves in connection with his initial claim. Dx. 1-138. Drs. Broudy and Dahhan agreed with Dr. Powell. Ex. 1 at 4, Ex. 3 (Broudy Tr. at 9, 11-13), Ex. 11, Ex. 15, Ex. 19, Ex. 21 (Broudy Tr. at 9-13, 15-35); Ex. 6, Ex. 9, Ex. 12, Ex. 14, Ex. 18, Ex. 20 (Dahhan Tr. at 10-14), Ex. 22. Dr. Dahhan added that Groves suffered a residual loss of function due to a partial lobectomy for cancer that was unrelated to coal dust exposure. *Id.*

On July 31, 2008, Dr. D. L. Rasmussen wrote to Groves's lawyer following his review of the medical evidence, the decision from Groves's initial claim, and the reports of Dr. Simpao, Powell, Dahhan, and Broudy, various x-ray readings and treatment notes. Apx. 86: Cx. 8. He agreed that the pathologists' reports were not diagnostic of pulmonary pneumoconiosis. Apx. 87: Cx. 8 at 2. He confirmed that Groves also had a "very significant history of cigarette smoking of at least 50 or more pack years," adding that cigarette smoking is a known cause of COPD responsible for 80% of COPD worldwide whereas occupational exposures "are felt to be responsible for approximately 15% of all COPD worldwide, including coal miners in this category." Apx. 88: Cx. 8 at 3. He stated that sixteen years of coal mine employment was sufficient to cause pneumoconiosis in a susceptible individual, but that only a minority of heavy smokers or heavily exposed coal miners develop significant chronic lung disease. He added: "It seems reasonable

8

to conclude that susceptible miners and susceptible smokers may be the same group, although this has never been demonstrated." *Id.*   Dr. Rasmussen nevertheless declared:

> In Mr. Groves's case, I clearly believe his chronic obstructive lung disease was the consequence of both smoking and mine dust exposure.… It is quite difficult in cases with both dust and smoke exposure to apprise relative importance of each toxin. It is clearly possible that all of Mr. Groves COPD is the result of coal mine dust exposure. It is also entirely possible that all of his impairment is due to cigarette smoking. However, neither scenario is likely to be the case. It seems quite intuitive that most of Mr. Groves' impairment is secondary to cigarette smoking and that coal mine dust contributes to a minor degree.
>
> I believe to a reasonable degree of medical certainty that Mr. Groves has at least legal if not clinical pneumoconiosis and that his coal mine dust contributes minimally to his disabling chronic lung disease.

Apx. 88, 89: Cx. 8 at 3, 4.

## V.    SUMMARY OF ARGUMENT

In Peabody *Coal Co. v. Smith*, 127 F.3d 504 (6th Cir. 1997), this Court clearly articulated the standard to be applied for determining the extent to which coal mine dust exposure must contribute to a miner's disease and respiratory disability to trigger the coverage of the BLBA. The Court's opinion finds its roots in the BLBA itself, 30 U.S.C. § 901(a), which precludes an award of benefits where the contribution made by dust exposure is so minimal that to award benefits is a purely speculative gesture that is not within the contemplation of Congress:

> We further agree with Peabody that the term "due to" in 30 U.S.C. § 901(a) requires a miner to prove more than a de minimis or infinitesimal contribution by pneumoconiosis to his total disability. A miner's disability simply cannot be said to be

> due to pneumoconiosis when the causation link is so tentative. As we held in *Adams,* the miner does not need to prove total disability by pneumoconiosis "in and of itself." 886 F.2d at 825. Moreover, we believe that the substantial contributing cause standard adopted by the Third and the Eleventh Circuits places an inappropriately heavy burden on the miners that is inconsistent with *Adams.* Nevertheless, a miner must affirmatively establish that pneumoconiosis is a contributing cause of some discernible consequence to his totally disabling respiratory impairment. The miner's pneumoconiosis must be more than merely a speculative cause of his disability. This interpretation of the term "due to" is more consistent with its ordinary meaning, as well as with the purposes of the Act, than is the de minimis standard relied upon by the ALJ in awarding benefits to Smith.

*Smith*, 127 F.3d at 507, citing *Adams v. Director, OWCP*, 886 F.2d 818 (6th Cir. 1989).

This Court's persuasive analysis seeking to harmonize the provisions of the BLBA notwithstanding precedents to the contrary in other circuits ultimately led the Department of Labor to clarify the legal standard to be applied in new regulations published in 2001. In those regulations, the Department adopted, in principle, this Court's formulation by excluding insignificant or de minimus causation as a proper basis for entitlement. *See* 20 C.F.R. §§ 718.201, 718.204(c).

In this case, the ALJ relied exclusively on the opinion of Dr. Rasmussen to find a sufficiently strong nexus between coal dust-related disease and disability to award benefits. Dr. Rasmussen was not able to establish a rigorous causation link, but instead engaged in the kind of speculative guessing that this Court rejected in *Smith*, that DOL rejected in its regulations, and that this Court rejected more recently in *Island Creek Coal Co. v. Calloway*, No. 09-4589.

The ALJ's reliance on Dr. Rasmussen's speculative opinion, unsupported by either objective testing, reference to medical research or any degree of reasonably

reliable certainty, falls far short of what the law requires. The ALJ's sole reliance on this inadequate evidence, more guesswork than science, is not consistent with decisional law, the BLBA or the APA, and does not reflect a proper standard for determining eligibility.

The ALJ compounded his error by his cryptic reliance on the proposition that crediting "Dr. Rasmussen's opinion best fits regulatory intent." This reliance reflects error *per se* and raises the notion that the BLBA is intended through its regulations to give most weight to any evidence that favors the claimant. The Supreme Court resoundingly rejected this notion in *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267 (1994). Neither the ALJ nor this Court has the authority to revisit the issue. The practice of favoring claimants over employers draws no force from any valid authority, including the BLBA. The Act always has reflected Congressional intent to have a fair adjudication and an outcome that is supported by the best evidence.

No court or agency or adjudicator has the authority to stray from this fundamental premise and no adjudicator is authorized to stray from the certainty and fair hearing rules guaranteed by the Administrative Procedure Act. Congress applied the APA to black lung adjudications because it favored a fair adjudication over a biased outcome where the evidence takes second place to cryptic and unsupported notions that claimants are more worthy than employers and should be awarded benefits no matter what the evidence shows.

The ALJ's invocation of an unknown and legally impermissible "intent of regulations" to award benefits may not be sustained by this Court. This reliance constitutes a clear error of law that must be rejected.

## VI.    ARGUMENT

### A.    Standard of Review

This Court's role on review of decisions of the Benefits Review Board is admittedly narrow.  *See Cal-Glo Coal Company v. Yeager,* 104 F.3d 827, 830 (6th Cir. 1997).  The ALJ is responsible for rendering findings of fact.  The Benefits Review Board then reviews the ALJ's findings and conclusions of law and may set them aside "only if they are not supported by substantial evidence in the record considered as a whole or if they are not in accordance with law." *Director, OWCP v. Quarto Mining Co.,* 901 F.2d 532, 536 (6th Cir. 1990).  This Court's review of the Benefits Review Board's decision is "limited to a determination whether the outcome below is supported by substantial evidence and was reached in conformance with applicable law." *York v. Benefits Review Board,* 819 F.2d 134, 136 (6th Cir. 1987).  Thus the Court's review "focuse[s] on whether the ALJ—not the Board—had substantial evidence upon which to base his … decision." *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628, 633 (6th Cir. 2009), *quoting Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 742 (6th Cir. 1997).  This Court reviews legal errors *de novo*.  *Peabody Coal Co. v. Greer*, 62 F.3d 801 (6th Cir. 1995).

### B.    The ALJ's Decision Does Not Conform With Applicable Law; No Evidence Satisfies the Correct Standard

In black lung claims, a claimant seeking benefits must prove four elements: (1) the existence of pneumoconiosis or black lung disease; (2) disease causation, *i.e.*, that the pneumoconiosis is coal workers' pneumoconiosis; (3) total disability due to a respiratory or pulmonary impairment; and (4) disability causation, *i.e.*, that the claimant's disability is due to pneumoconiosis.  20 C.F.R. §§ 718.202-718.204. But for a presumption that x-ray, autopsy or biopsy evidence of pneumoconiosis arises out of a claimant's coal mine employment where the claimant has worked as

a miner for ten or more years, the claimant bears the burden of establishing each of the remaining elements by a preponderance of the evidence. 20 C.F.R. § 718.203; *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267. Where, as here, the claimant has filed multiple claims, DOL's regulations provide that a later claim may be adjudicated only if the evidence establishes a change in the claimant's condition between the denial of the prior claim and the adjudication of the new claim. 20 C.F.R. § 725.309.

In Groves's case, the ALJ found the required change, and entitlement on the merits, by relying principally on an opinion rendered by Dr. Donald Rasmussen and supported by Dr. Simpao, that coal dust exposure was only a minor contributor to Groves's pulmonary disease and that its contribution to Groves's total disability was only *de minimus*. Groves presented no stronger proof of entitlement. The ALJ relied on these thin threads to award benefits. The ALJ applied the wrong standard for both determining whether Groves has black lung disease and whether he is disabled due to it. In any event, neither medical opinion is substantial, reliable or probative evidence supporting an award under the law of this Court and the plain language of the applicable regulations.

> 1. To Establish Legal Pneumoconiosis, a Claimant's Impairment Must Be Significantly Related to or Substantially Aggravated by Coal Dust Exposure

Section 718.202 governs findings of pneumoconiosis. Where, as here, the existence of the disease is not established by x-rays, biopsy or autopsy or any applicable presumption, section 718.202(a)(4) permits reliance on reasoned and documented medical opinions that diagnose pneumoconiosis, as defined in section 718.201. Section 718.201(a) defines the term "pneumoconiosis" as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary

impairments, arising out of coal mine employment." The term "arising out of coal mine employment" is defined to "include any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b). *See also Eastover Mining Co. v. Williams*, 338 F.3d 501, 509 (6th Cir. 2003) ("Legal pneumoconiosis includes all lung diseases meeting the regulatory definition of any lung disease that is significantly related to, or aggravated by, exposure to coal dust."). In *Smith*, this Court held that a de minimus contribution suggested by a reporting physician is too speculative to support a finding or an award. *Smith*, 127 F.3d at 507.

The ALJ set out this definition in his initial decision, but he abandoned the standard when it came to his fact-finding. Dr. Rasmussen stated that it was "clearly possible that all of [Claimant's] COPD is the result of coal mine dust exposure," but it was "also entirely possible that all of his impairment is due to cigarette smoking." Apx. 88: Cx. 8 at 3. The doctor decided that it was "quite intuitive that most of [claimant's] impairment is secondary to cigarette smoking and that coal mine dust contributes to a minor degree." *Id.* The ALJ decided that Dr. Rasmussen's diagnosis of COPD was a diagnosis of legal pneumoconiosis. Initially, the ALJ "accept[ed] his opinion that Claimant's COPD is mostly due to cigarette smoking and secondarily contributed to by coal dust inhalation [sic]." Apx. 67: ALJ D&O at 25. The ALJ added that Dr. Simpao's opinion supported this finding because Dr. Simpao also diagnosed "COPD caused by smoking and coal dust inhalation [sic]." *Id.* According to the ALJ, Dr. Simpao's opinion was based on Groves's work history, smoking habit and physical findings even though Dr. Simpao did not explain his diagnosis with reference to those physical findings

14

and no other doctor reported similar findings, either before or after Dr. Simpao's examinations. *Id.* Dr. Simpao's opinion seems to be purely gratuitous.

Although the Board vacated that decision, the ALJ's conclusion remained unchanged on remand. The ALJ again acknowledged that the best that Dr. Rasmussen could say was that, intuitively, coal dust contributed to a minor degree. Apx. 19: ALJ D&O on Remand at 7. Relying on section 718.203 and this Court's decision in *Southard v. Director, OWCP*, 732 F.2d 66 (6th Cir. 1984), the ALJ decided that all that the claimant needed to show was that his "pneumoconiosis arose at lest [sic] in part out of coal mine employment." *Id.* The ALJ ignored this Court's decision in *Smith*.

That was legal error. The 2001 regulations codified the distinction between legal pneumoconiosis and clinical pneumoconiosis. *See Harman Mining Co. v. Director, OWCP* [*Looney*], 678 F.3d 305, 308-09 (4th Cir. 2012). Under 20 C.F.R. § 718.201(a)(1), clinical pneumoconiosis is defined as "those diseases recognized by the medical community as pneumoconiosis." Section 718.201(a)(2) defines "legal pneumoconiosis" as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment." This Court's decisions also confirm that distinction, by recognizing that "'clinical' or 'medical' pneumoconiosis must be distinguished from 'legal' pneumoconiosis. Medical pneumoconiosis is 'the lung disease caused by the fibrotic reaction of the lung tissue to inhaled dust ...' … Legal pneumoconiosis., [sic] however, is much broader and 'refers to all lung diseases which meet the statutory or regulatory definition of being any lung disease which is significantly related to, or substantially aggravated by, dust exposure in coal mine.'" *Glen Coal Co. v. Seals*, 147 F.3d 502, 508 (6th Cir. 1998) (quoting *Doris Coal Co. v. Director, OWCP*, 938 F.2d 492, 496 (4th Cir. 1991)).

15

In *Southard*, the claimant established that he had "medically recognizable pneumoconiosis." The Court held that finding then "required the inquiry to proceed to causation — whether the impairment arose at least in part out of employment in the nation's coal mines," an inquiry governed by section 718.203. Instead, the ALJ erroneously looked to the higher burden imposed by section 718.201. That is all that the Court held in *Southard*. *Adams v. Director, OWCP*, 886 F.2d 818. The Court's decisions in *Adams* and *Southard* must be construed to be harmony with *Smith*.

In *Adams*, the Court explained that when the proof establishes "clinical" pneumoconiosis, under *Southard*, the Court should then apply the causation standard at section 718.203, but when the claimant is unable to establish clinical pneumoconiosis, the proof must establish the existence of a disease "arising out of coal mine employment" as defined in section 718.201. *Adams*, 886 F.3d at 822 ("In our view, *Southard* makes clear that when a claimant establishes 'clinical' pneumoconiosis, 20 C.F.R. § 718.202, that arises from his coal mine employment, *id.* § 718.203, he has satisfied the second sentence of section 718.201 ('This definition includes ... coal workers' pneumoconiosis ... arising out of coal mine employment.'), and no more is required of him."); *id.* at 822 n.4 ("[I]t must be remembered that the claimant in *Southard* established the existence of pneumoconiosis by x-ray, just as Adams did in this case.… It would be a mistake, we believe, to apply *Southard* outside of this context, because section 718.203 specifically requires that a miner be suffering from pneumoconiosis before its provisions are available.").[8]

Thus, as this Court held in *Adams* and *Smith*, now codified in DOL's regulations, where the claimant seeks to establish "legal" pneumoconiosis, the

---

[8]    *But see Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 576 (6th Cir. 2000).

proof must establish that the claimant's condition "arose out of" his or her coal mine employment, *i.e.*, that dust exposure significantly contributed to or substantially aggravated his or her condition under section 718.201(b), thus ruling out awards based on a de minimus standard.  In so doing, the claimant will have already established disease causation under section 718.203.   This Court has rejected the notion that a bare finding that a claimant's impairment is due to both cigarette smoking and coal dust exposure is sufficient to establish legal pneumoconiosis.  *See Griffith v. Director, OWCP*, 49 F.3d 184, 186 (6th Cir. 1995) (finding an opinion "quite equivocal as to the etiology of the obstructive lung disease" when it simply named both smoking and coal mine employment as possibilities); *Greene v. King James Coal Mining Co.*, 575 F.3d at 632, 635 (affirming the ALJ's rejection of an opinion that both smoking and coal dust were possible causes of the claimant's impairment as proof of legal pneumoconiosis when the doctor acknowledged that depending on the years of coal mine employment, coal dust exposure might contribute only minimally).

In this case, the ALJ did not require Groves to establish that his lung disease "arose out of coal mine employment" as defined in section 718.201(b), and as required in *Smith*.  Instead, he applied the "at least in part" standard of section 718.203 that applies only to "clinical" pneumoconiosis.  In relieving Groves of the obligation of establishing that his chronic obstructive pulmonary disease "arose out of coal mine employment," the ALJ applied an incorrect standard of proof.  The Board, in turn, failed to enforce the proper standard.  In keeping with controlling precedent, this Court must reverse.

> 2.    To Establish Disability Due to Pneumoconiosis, the Proof Must Establish that Pneumoconiosis Played More than a Minimal or Minor Role

The ALJ's decision is not rescued by his finding that Groves's total disability was due coal mine employment under section 718.204.  Here too, the ALJ did not apply the correct standard.  Section 718.204(c) defines total disability due to pneumoconiosis.  It states:

> A miner shall be considered totally disabled due to pneumoconiosis if pneumoconiosis, as defined in § 718.201, is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment.  Pneumoconiosis is a "substantially contributing cause" of the miner's disability if it:
>
> (i) Has a material adverse effect on the miner's respiratory or pulmonary condition; or
>
> (ii) Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment.

20 C.F.R. § 718.204(c)(1).  As DOL explained in its preamble to these regulations,

> Evidence that pneumoconiosis made only a negligible, inconsequential or insignificant contribution to the miner's disability is insufficient to establish total disability due to pneumoconiosis.

65 Fed. Reg. 79,923 (col. b-c) (Dec. 20, 2000).

The ALJ did not apply this standard.  Instead, he stated that this Circuit requires only "that total disability be due 'at least in part' to pneumoconiosis."  Apx. 29: ALJ D&O on Remand at 17.  The only qualifier the ALJ noted was that "a claimant must demonstrate that the disease was more than a *de minimus* or 'infinitesimal' factor in the miner's total disability."  *Id.*  The ALJ then concluded

18

that Dr. Rasmussen's opinion that exposure to coal dust minimally contributed to Groves's disabling lung disease established the required disability due to pneumoconiosis, adding: "I find Dr. Rasmussen's opinion that coal dust minimally contributes to Claimant's disability to satisfy the *de minimus* standard." *Id.*

The substantially contributing cause test is not a "*de minimus*" test. It is a "more than *de minimus*" test. It requires a "material" effect that can be medically documented with reliable expert evidence and objective tests. A doctor's opinion that a claimant's coal dust exposure contributed only minimally therefore does not satisfy section 718.204(c) as a matter of law or fact. The ALJ's failure to apply the proper standard here requires that his decision be vacated.

This is not a case of first impression in this Circuit. This Court faced the same issue in *Island Creek Coal Co. v. Calloway*, *supra*. There, as here, the ALJ applied a test other than the test identified in section 718.204(c). This Court vacated that decision, explaining:

> Although the ALJ did initially cite 20 C.F.R. § 718.204(c) and the correct standard, he never again referenced the "substantially contributing cause" language. Instead, the ALJ appears to have applied a less rigorous standard in which "a claimant must affirmatively establish only that his totally disabling respiratory impairment . . . was due—at least in part—to his pneumoconiosis." The ALJ repeatedly referenced this less demanding standard when performing his analysis of the doctors' evaluations. For example, when summarizing his assessment, the ALJ stated that "Drs. Majmudar and Baker both opined that Claimant's coal mine employment contributed, *at least in part,* to his total disability." (emphasis added)

> The ALJ never found that Calloway's coal mine employment or his pneumoconiosis was a "substantially contributing cause" of his total disability. Rather, the ALJ very clearly stated that "I find that Claimant has established by a preponderance of the

> evidence that his total disability was due in part to his pneumoconiosis." This conclusion clearly fails to use the correct standard in which the claimant's pneumoconiosis must be a *substantially* contributing cause of his or her total disability. Accordingly, remand is necessary in order to provide the ALJ with an opportunity to assess the case using the proper standard.

*Calloway*, slip op. at 15-16 (emphasis in original).

The same result is required in this case.  In applying an "in part" standard rather than the "substantially contributing cause" standard, the ALJ here, as in *Calloway*, applied a less rigorous standard than the regulation demands.  Thus here, as in *Calloway*, the ALJ did not find that Groves's coal mine employment or his pneumoconiosis was a "substantially contributing cause" of his total disability.  In this case, the ALJ did not even find that Groves's coal dust exposure significantly contributed to or substantially aggravated his pulmonary condition.  Rather, the ALJ very clearly relied on an opinion that coal dust minimally contributed to Groves's disability to find that "Dr. Rasmussen's opinion that coal dust minimally contributes to Claimant's disability satisfy[ies] the *de minimus* standard.

The ALJ's conclusion that a *de minimus* or minor contribution establishes that pneumoconiosis is a substantially contributing cause of a claimant's total disability finds no support in the plain language of the regulation or controlling precedent.  The words in the regulation must be interpreted to mean what they say.  A *de minimus* contribution is not a substantial contribution.  Standing alone, a minimal or minor effect is not a significant, or material or substantial effect.  Here, as in *Calloway* and *Smith*, the decision cannot stand.

3.    No Evidence in the Record Satisfies the Causation Standard for
Finding Either Legal Pneumoconiosis or Disability Due to It

The legal errors in the ALJ's decision might require remand, but here, no evidence satisfies claimant's burden of proof as a matter of law.  The ALJ relied on an opinion of Dr. Rasmussen to find that Groves's pulmonary impairment constituted "legal" pneumoconiosis and that his disability was due to pneumoconiosis.  That opinion is not substantial, reliable or probative evidence of the disease or disability due to it as a matter of law.

Dr. Rasmussen is not a newcomer to federal black lung litigation.  He has served as a medical expert and advocate for claimants since the inception of the program.  His opinions, as reported in the circuit courts' decisions, disclose that he chooses his words carefully.   Where he believes that coal dust exposure is a significant contributing factor, he says so in so many words.  *See e.g.*, *Cumberland River Coal Co. v. Banks*, 690 F.3d 477, 486 (6th Cir. 2012) (where Dr. Rasmussen concluded that "coal dust exposure [was] a significant contributing factor in [Banks'] pulmonary impairment"); *Westmoreland Coal Co., Inc. v. Cochran*, 718 F.3d 319 (4th Cir. 2013) (where Dr. Rasmussen concluded that "Mr. Cochran's coal mine dust exposure must be considered a significant contributing factor to his what should be described as overlap syndrome . . . and that he does have at least legal pneumoconiosis, i.e. COPD/emphysema caused in significant part by coal mine dust exposure."); *Mingo Logan Coal Co. v. Owens*, 2013 WL 3929081 (4th Cir. July 31, 2013) (where Dr. Rasmussen opined that Owens' condition was "primarily the result of [his] long term exposure to coal mine dust and that he suffers from coal mine induced, totally disabling chronic lung disease.").

Dr. Rasmussen's opinion in this case is far different than his opinions in *Owens*, *Cochran* and *Banks*.  Here, the best the doctor could say was that coal dust was a minor factor, and that it contributed only minimally.  He acknowledged that

all—or none--of Groves's respiratory impairment could have been due to his cigarette smoking and that all—or none—of Groves's lung disease could have been due to his coal dust exposure although that was not a likely scenario. He conceded that there was no test to determine whether a patient who is susceptible to the effects of cigarette smoking is susceptible to the effects of coal dust exposure. Thus, he did not render an opinion based on medicine or science; rather, he relied on his intuition, and concluded that it was "quite intuitive: that "most of Mr. Groves' impairment is secondary to cigarette smoking and that coal mine dust contributes to a minor degree."    Apx. 88, 89: Cx. 8 at 3, 4.    This kind of speculation was considered insufficient to support a finding in *Smith* and it is inadequate in this case as well.

The doctor's speculation is not substantial evidence as a matter of law. Wholly apart from whether an opinion that rests on intuition can constitute a reasoned and documented medical opinion, the best that the doctor could provide here was the possibility of causation based on the mere fact of exposure. As one court explained:

> If a claimant in an agency proceeding had the burden of establishing that a traffic light was green his way, he could not satisfy his burden of proving that fact with testimony that "it is possible that it could" have been green his way.  While it is possible it could have been green, it is also possible that it could have been red or yellow or even non-functioning.  Because the testimony is entirely speculative, it does not advance the claimant's case.  More importantly, the statement that it is possible that the light could have been green does not exclude, to any degree, the opposite proposition.  Therefore, it cannot establish more likely than not that the light was green.

*U.S. Steel Mining Co., Inc. v. Director, OWCP* [*Jarrell*], 187 F.3d 384, 390-91 (4th Cir. 1999).  *See also Blakley v. Amax Coal Co.*, 54 F.3d 1313 (7th Cir. 1995);

22

*Cochran*, *supra* (Traxler, dissenting) ("The conclusion contains the requisite words, but the underlying basis rests in mere speculation and possibilities."); *Cross Mountain Coal, Inc. v. Ward*, 93 F.3d 211, 217 (6th Cir. 1996) (holding that an opinion that a claimant's obstructive lung disease was due to some combination of smoking and coal dust exposure, but the doctor was unable to assign an amount of damages to each "neither establishes nor rules out a finding of total disability due to pneumoconiosis."); *Massey v. Peabody Coal Co.*, 2010 WL 2711288  (4th Cir. July 6, 2010) (same).

The ALJ's casting of Dr. Simpao's opinion in a supporting role does not provide the missing substantiality of evidence.  The ALJ "afford[ed] weight to Dr. Simpao's OWCP evaluation," finding it "well documented and supportive of Dr. Rasmussen's opinion."  Apx. 28: ALJ D&O on Remand at 16.  The ALJ not find the doctor's opinion was well-reasoned, however.  Nor could he.  Dr. Simpao provided no explanation for his conclusion that Groves's coal dust exposure was a significant contributing factor.  He admitted that his opinion was not reasoned as a matter of science or law when he acknowledged that "there is no proven procedure to determine the degree these factors have influenced his [Groves's] pulmonary impairment."  Apx. 85: Dx. 11-5.  By his own admission, Dr. Simpao's opinion rests on no basis at all.

**C.     An ALJ's Reliance on the Intent of the Regulations Rather than the Statute, Regulations and Evidence in the Record Violates the Administrative Procedure Act and Arch's Due Process Rights**

Even if Dr. Rasmussen's opinion (as supported by Dr. Simpao) could somehow be considered substantial evidence, the ALJ erred in crediting that view because "Dr. Rasmussen's opinion best fits the regulatory intent."  Apx. 28: ALJ D&O on Remand at 16.  That "regulatory intent" is not defined by the ALJ.  To the

extent that his decision provides any insight into what the ALJ meant, it appears that the ALJ referenced statements made in the preamble to DOL's regulations "that the risk of chronic bronchitis clearly increases with increasing dust exposure and that smokers who mine have an additive risk of developing chronic bronchitis" and that "[e]ven in the absence of smoking, coal mine dust exposure is clearly associated with clinically significant airways obstruction and chronic bronchitis. The risk is additive with cigarette smoking." Apx. 18: ALJ D&O on Remand at 6. *See also* Apx. 25: ALJ D&O on Remand at 13.[9]  The ALJ declared that the opinion of Dr. Rasmussen was consistent with the 2001 regulations, and accorded less weight to the contrary opinions of Drs. Broudy and Dahhan because "they did not adequately address whether claimant's twenty years of coal mine dust exposure aggravated his COPD" and "they do not address that legislative finding made by the department [sic] of Labor that smoking and mining effects may be additive, whereas, Dr. Rasmussen's rationale does." Apx. 25, 28: ALJ D&O at 13, 16.

The ALJ had to resolve a conflict in the medical opinions addressing the source of Groves's disease and disability.  The ALJ's reliance on the "intent" of the regulations or the preamble was both improper and selective.  The intent of the statute and the regulations is to provide benefits to those miners who deserve it.  30 U.S.C. § 901(a).  The converse also holds.  *See Director, OWCP v. Greenwich Collieries*, 512 U.S. 267 (rejecting the notion that all doubt regarding entitlement must be resolved in claimants' favor); *Consolidation Coal Co. v. McMahon*, 77 F.3d 898, 905 (6th Cir. 1996) (finding a "manifest injustice" when a claimant receives benefits to which he is not entitled and an employer is required to pay for those

---

[9]    There is no evidence in peer-reviewed scientific literature that chronic bronchitis due to mining is capable of latent onset or progression.  No clinical or molecular studies support the ALJ's personal scientific views and they should be deemed unsupported and worthless as evidence.

benefits).   Neither the regulations nor the preamble to the regulations or their various amendments suggests entitlement in an individual claim, let alone every claim.   The preamble discusses the epidemiology, but does not indicate whether or how the conclusions discussed there apply to individual cases.   Instead, DOL concluded in the preamble that "[w]hether a particular miner's disability is due to his coal mine employment or smoking habit must be resolved on a claim-by-claim basis."   65 Fed. Reg. at 79,941 (col. c).   DOL recognized in the preamble that not every claimant for benefits would be entitled to them.   *See id.* at 79,941 (col. a) ("As can be seen from Marine's table … only a minority of miners will have significant decrements in pulmonary function.").

By crediting Dr. Rasmussen's speculative opinion because it was consistent with some unexplained "intent" of the preamble, the ALJ relied on standards that are not found either in the BLBA or in any properly published regulation.   No party can defend itself when the criteria applied by the adjudicator are not the standards announced in the regulations or where the agency changes the standard announced through litigation rather than rulemaking, especially where the criteria applied are intended to add to or undermine the value of evidence developed by the parties.   *See Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359 (1998). That is what the ALJ and the Board did here and that decision not only violates the APA, but Arch's due process rights.

First, although this Court and others have held that an ALJ may permissibly consult the preamble in rendering a decision, no court has held that the ALJ may treat the preamble, let alone the intent of the preamble, as binding.   *See A & E Coal Co. v. Adams*, 694 F.3d 798 (holding the ALJ did not err citing the preamble twice, and explicitly mentioning it once); *Looney*, 678 F.3d 305, 314-15 (resort to the preamble was not improper because the ALJ did not rely on it too much; she only

25

consulted it).  In *Adams*, this Court specifically recognized that "the preamble merely explains why the regulations were amended.  It does not expand their reach."  *Adams*, 694 F.3d at 802.  Here, the ALJ's reliance on the intent of the preamble cannot be reconciled with *Adams*, the APA or *Greenwich Collieries*.  Nor can the decision be reconciled with the D.C. Circuit's decision in *National Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 863 (D.C. Cir. 2002) (recognizing that regulations provide no presumption of entitlement in cases involving former miners who smoked cigarettes and calling an ALJ's potential reliance on the preamble to find disease or disability causation an "*anticipated* misapplication[] of the rule").  The ALJ's reliance on the intent of the preamble to credit Dr. Rasmussen's opinion over those that did not is plain error.  As a source of legislative standards, that reliance is illegal *per se*.

The APA, 5 U.S.C. § 551(4), defines a "rule" as " the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency …."  The APA requires notice and comment rulemaking for all legislative rules affecting the substantive rights of parties to administrative adjudications subject to its provisions.  5 U.S.C. § 553(b).  The BLBA expressly repeats this unalterable requirement.  30 U.S.C. § 936(a).  As the Supreme Court has recognized, rules that have "the 'force and effect of law'" require notice and comment rulemaking.  *Chrysler Corp. v. Brown,* 441 U.S. 281, 301, 302 (1979).  "In enacting the APA, Congress made a judgment that notions of fairness and informed administrative decisionmaking require that agency decisions be made only after affording interested persons notice and an opportunity to comment."  *Id.*, 441 U.S. at 316.

The ALJ's unexplained intent to rely on some inchoate "principle" not found in either law or any regulation is an abuse of judicial power and here, reflects a commitment to award benefits rather than to rigorously apply the law and precedent.  This approach is incompatible with the Rule of Law principles that guide our jurisprudence and it should be soundly rejected by this Court.  Judging cases by party identity is an affront but the ALJ here plainly has embraced that approach and it cannot be condoned.

## VII.  CONCLUSION

The decision in this case should be reversed.

Respectfully submitted,

s/Laura Metcoff Klaus

Mark E. Solomons
Laura Metcoff Klaus
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, D.C. 20037
(202) 533-2361

**CERTIFICATION**

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 8,314 words (exclusive of the cover, table of contents and table of authorities).  I relied on my word processor to obtain the count, using Microsoft Word 2010.

In addition, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14 pt.


s/Laura Metcoff Klaus
Laura Metcoff Klaus

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2013, I served the foregoing Petitioners' Brief on the following parties through the CM/ECF system:

Jeffrey S. Goldberg Esq.
blls-sol@dol.gov; Goldberg.jeffrey@dol.gov

Ann Marie Scarpino, Esq.
blls-sol@dol.gov, scarpino.ann@dol.gov

and

Brent Yonts, Esq.
brentyonts@yahoo.com, michellenoe10@yahoo.com,

s/Laura Metcoff Klaus
Laura Metcoff Klaus